A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FILED

JUL – 1 2011

Deputy Clerk, U.S. District Court
Middle District of Louisiana
Baton Rouge, La.

*Kermit Parker (129332)*

*pro se Plaintiff*

129332
Inmate (DOC) number

(Enter above the full name of each
plaintiff in this action.)

VERSUS

*N. Burl Cain Warden, Gary
Midki 77, Spence Dilworth
and Et al.*

(Enter above the full name of each
defendant in this action.)

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. §1983.

This packet includes two copies of a complaint form and one copy of the pauper affidavit.

IF YOU ARE A PARISH PRISONER, you must file an original and one copy of your
complaint for each defendant you name.  For example, if you name two defendants, you must file
the original and two copies of the complaint.  You should also keep an additional copy of the
complaint for your own records.

IF YOU ARE A D.O.C. PRISONER, you must file an original and one copy of your
complaint.  If the defendants are still employed by the Department of Public Safety and Corrections,
only one service copy is needed. Otherwise, you must supply a copy of the complaint and the service
address for each defendant no longer employed by the Department of Public Safety and Corrections.

All copies of the complaint must be identical to the original.

The names of all parties must be listed in the caption and in part III of the complaint exactly

the same.

In order for this complaint to be filed, it must be accompanied by the filing fee of $ 250.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pre-pay the filing fee and service costs, you may petition the court to proceed in forma pauperis. For this purpose, a pauper affidavit is included in this packet. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, <u>DO NOT INCLUDE EXHIBITS.</u>

When you have completed these forms, mail the original and copies to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.    Previous Lawsuits

A.  Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?   Yes ( ) No ( ✓ )

B.  If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.  Parties to this previous lawsuit
       Plaintiff(s): _____

       _____

       Defendant(s): _____

       _____

2.  Court (if federal court, name the district; if state court, name the parish):

       _____

       _____

3.  Docket number: _____

4.  Name of judge to whom case was assigned: _____

_____

2

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):

_____

_____

6. Date of filing lawsuit: _____

7. Date of disposition: _____

C.  Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?

       Yes ( ✓ )    No ( )

If your answer is yes, list the civil action numbers and the disposition of each case.  You must identify in which federal district or appellate court the action was brought.

_____ *Unavailable* _____

_____

II.    Place of present confinement: *Louisiana State Penitentiary*

A.  Is there a prisoner grievance procedure in this institution?

       Yes ( ✓ ) No ( )

B.  Did you present the facts relating to your complaint in the state prisoner grievance procedure?

Yes ( ✓ ) No ( )

C.  If your answer is Yes:

1.  Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. *LSP-2009-0663*

2.  What steps did you take? *Went through the ARP Process twice and on the last 1st step response No second step response was given.*

3.  What was the result? *Denial*

_____

D.  If your answer is No, explain why not: _____

_____

III.    Parties
(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A.  Name of plaintiff(s) _____ *See Attached*
    Address _____

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B.  Defendant _____ *See Attached* _____ is employed as
    _____ at _____

C.  Additional Defendants: _____
    _____
    *See Attached*
    _____

IV.    Statement of Claim

State here as briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. <u>**Do not given any legal arguments or cite any cases or statutes.**</u> If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

*See Attached*

4

UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA


Kermit Parker (129332)

VERSUS

STATE OF LOUISIANA Through
LOUISIANA DEPARTMENT OF
Public Safety and Corrections
through James Leblanc, Warden
N. Burl Cain, Gary Midkiff and
the West Feliciana Sheriff's Captain
Spence Dilworth and et al.

Civil Action Number:

JUDGE:

MAGISTRATE JUDGE:

STATE OF LOUISIANA


Petition For Damages

NOW INTO COURT, Comes Pro Se Plaintiff/Petitioner
Kermit Parker who respectfully requests redress for
the following reasons to-wit:

Jurisdiction and Venue

The Jurisdiction of this HONORABLE COURT is invoked
Pursuant to 28 USC § 1331 "Federal Question" accordingly
plaintiff specifically Seeks relief pursuant to the 28
USC § 1983, the Constitution of the UNITED STATES
for injuries, damages and other losses as well as
Supplemental jurisdiction pursuant to 28 USC §
1367 over all state law claims.

1

2.

Venue is proper pursuant to 08 USC § 1391 (b)(1)(2) in that a substantial part of the events or ommissions given rise to the claims herein occurred in this judicial district in Angola, La. in West Feliciana Parish.

3.

PARTIES

The Petitioner is Mr. Kermit, who is a major, and inmate residing in Angola Prison in West Feliciana Parish.

4.

The Defendants are:

STATE OF LOUISIANA, through the Department of Public Safety and Corrections, pursuant to Louisiana Revised STATUES 36:401, a statutorily created and established body corporate having to power to sue and be sued, domicile of which is the Parish of East Baton Rouge in the state of Louisiana, which is the governing authority over the Louisiana STATE Penitentiary.

Secretary of The Department of Public Safety and Corrections, James M. Leblanc who is responsible for the functioning and control of all programs within the Department.

2

He formulates rules and regulations and determines policy regarding Management, Personnel and total operations. Who pursuant to Louisiana Revised statues 36:401, a statutorily created and established body corporate having to power to Sue and be Sued, the domicile of which is the parish of East Baton Rouge in the State of Louisiana, which is the governing authority over the La. State Penitentiary, is being Sued in his individual and official Capacity.

Linda Ramsey who is the Secretaries Designee of D.O.C is responsible for the functioning and control of many programs within the Department and responds to the Second Step response of the ARP's in place of the Secretary, is being Sued in her individual and official Capacity.

WARDEN BURL CAIN, who at all times present was the Warden of the La. State Penitentiary who is Sued and named in his individual and official Capacity.

Gary MIDKIFF who at all times pertinent was an Employee of the Louisiana STATE Penitentiary as a Social Worker, is Sued in his individual and official Capacity.

Trish Foster who at all times was the Wardens Designee at Angola is sued in her individual and official Capacity.

Kevin Benjamin who at all times was the Assistant Warden of the Main Prison and in particularly the Angolite Supervisor is sued in his individual and official Capacity.

Hawkins and Eli Wilson who at all times pertinent were investigators for Angola Prison are being sued in their individual and official Capacities.

Cindy Vannoy who at all times was employed as a Lieutenant at the Louisiana State Penitentiary at Angola Prison is named and being sued in her individual and official Capacity.

John Orr who at all times was employed as a Lieutenant at Angola Prison is being named and sued in his individual and official Capacity.

Amy Boeker and Amanda Doe who at all times present were employed as EMT Personnel at Angola prison are being sued in their individual and official Capacities.

Jonathan Arlen Roundtree who at all times and presently is employed as the Medical Director at Angola Prison is being sued in his individual and official Capacity.

4

Spence Dilworth who at all times was employed by the West Feliciana Sheriffs Dept. as the Chief investigator and holds the rank of Captain is being sued in his individual and official Capacity.

REINbold who at all times was employed as the Chief Psychiatrist at Angola Prison, is being sued in his individual and official Capacity.

ARD who at all times was employed as a psychologist at Angola prison and she is being sued in her individual and official Capacity.

David Ankerbrand who at all times was employed as a social Worker at Angola Prison is being sued in his individual and official Capacity.

## 5.
## FACTS

The pro se Plaintiff Kermit Parker is an inmate offender at the Louisiana STATE Penitentiary at Angola and has remained so through out this Complaint.

## 6.

Mr. Parker was an inmate at the Louisiana State Penitentiary (Angola hereinafter) on OCTOBER 7, 2008 when he was raped by Gary Midkiff a social Worker and employee of Angola Prison.

5

7.

Defendant Midkiff is an obvious homosexual Male employee of Angola.

8.

Defendant Midkiff had a documented history of reports of Sexual Misconduct by inmates before the rape of the plaintiff (Mr. Parker).

9.

A summary of a part of the inmate Complaints against Defendant Midkiff was made a part of the report of investigation Services of Angola in which was performed.

10.

The Summary of Complaints includes complaints of 9 other inmates who had been sexually assaulted or threatened with assault by Midkiff before the rape of the plaintiff.

11.

On October 7, 2008 the Plaintiff was in a booth tier cell (a closed in cell that offers no visual access other than through the entrance doorway) at Camp C when the Defendant Midkiff approached the plaintiffs Cell and told him that he (Midkiff) could use his influence to help on the Disciplinary Board (high Court) report if the plaintiff

Would allow Midkiff to see his Penis.

12.

Despite the fact that the Plaintiff has been under treatment of Midkiff for several years and throughout it all Midkiff has stalked and sexually harassed Mr. Parker via request and wanting to see his penis/see Mr. Parker masturbate Defendant Midkiff never relented.

13.

The Plaintiff however refused Midkiffs advances and offer and Midkiff threatened that if the Plaintiff didnt allow him to see his penis hed tell security that the plaintiff spit on him (Midkiff) or slapped him and threatened the plaintiff that hed thereafter be beatened.

14.

Under the threats of violence and in fear for his life the Plaintiff complied and Midkiff then placed his mouth on the Plaintiffs penis an aggrivated Rape.

15.

The Plaintiff did not become aroused by the actions of Midkiff performing oral sex on him.

16.

Defendant Midkiff then slid his finger against the Plaintiffs anus and attempted to insert his finger up Mr. Parkers anus

7

as he continued to perform oral sex on the plaintiff.

17.

The Plaintiff then shoved Midkiff's Mouth off of his penis inso ceasing the assault.

18.

The Plaintiff then held his penis against the inside of his Jump Suit and when Defendant Midkiff left Plaintiff vigorously wiped his penis on the Cloth and Cut the entire section out seperating it into two pieces of Material evidence and then securing them in foiled envelopes.

19.

Due to distrust in institutional authorities plaintiff immediately sought Attorney representation and Mailed a portion of the evidence material to an outside Attorney to Maintain as evidence, and stashed the other evidence in his property.

20.

After receiving no reply plaintiff sought the FBI's investigative assistance all to no avail.

21.

As the 90 day window approached to file an ARP Grievance Plaintiff was compelled to file an ARP to the Administration.

22.

In accordance to Civil Procedure Plaintiff filed his ARP to DOC Headquarters and the ARP was rejected by Defendant Leblanc. Plaintiff thereafter refiled his ARP to Defendant Cain who accepted the ARP and gave it an identification # ARP LSP 2009-0663.

23.

Defendants Eli Wilson and Spence Dilworth had plaintiff and his evidence brought to the institutional investigative Services office and questioned plaintiff about the incident.

24.

During the questioning the plaintiff requested a voluntary Polygraph Examination in order to establish Truth and Defendant Dilworth stated: There was absolutely no need because he knew that the Plaintiff was being truthful and went on to say that Defendant Midkiff should not have been employed at Angola Prison in consideration of his past grievances/incidents. The investigation then ceased.

25.

Defendant Dilworth then asked Plaintiff if he had any additional cloth (evidence) and plaintiff told him no. Defendant Dilworth and Wilson then exited the room with the evidence.

9

26.

On the following day Plaintiff went to the prisons infirmary and was told by Camp J inmates that Security officers were telling them that "the Plaintiff came to the infirmary holding a mouth full of Semen and spat it into a cup, as evidence from performing oral sex on the Defendant Midkiff.

27.

Plaintiff discovered shortly after the slanderous incident that several hospital(infirmary) ER personnel were discussing the same misinformed allegation and spreading rumors into compelling inmates to spread the same rumors all over the Angola Prison.

28.

Defendant Spencer Dilworth and Eli Wilson confronted Defendant Midkiff and questioned him about the rape into offering him the opportunity to possibly clear his name and remain employed during the DNA analysis "if he'd take a Polygraph test and submit his Saliva (DNA) Sample.

29.

Defendant Midkiff refused and thereafter was charged and arrested for aggravated rape and released after posting a $200,000 bond.

10

30.

Appro. 3 weeks after Midkiffs arrest Defendant eli wilson approached Plaintiff at the infirmary and asked What kind of settlement did Plaintiff think he'd receive?

31.

Plaintiff asked Defendant Wilson why did he think Plaintiff would take a Settlement?

32.

Defendant Wilson stated: "Considering the circumstances one hundred thousand dollars would be nice to say that you only got your Dick sucked."

33.

Plaintiff then Stated to Defendant Wilson that he has always been heterosexual so considering what plaintiff was put through it was against everything plaintiff believed in and as far as plaintiff was concerned the problem with sexual abuse on inmates in Angola all stemmed from similar concepts as Defendant Wilsons throughout the administration and always sweeping these types of Crimes under the rug against prisoners. Plaintiff went on to tell Wilson that he could offer a half of a Million dollars but plaintiff was going to make it a point to Expose all of the sexual abuse in Angola done against inmates.

34.

Defendant Wilson smiled and called Plaintiff a fool and left.

11

35.

Within 30 days of the rumors that were spread that the plaintiff was Gay and the discussion between plaintiff and defendant Wilson an inmate was given a knife in an attempt to harm or kill the plaintiff.

36.

Plaintiff filed an informal Correspondence to Defendant Cain and Dilworth and received no response.

37.

Plaintiff then filed a formal Complaint (ARP) to Defendant Cain and Leblanc and no response nor assistance was given. Plaintiff also appealed the charges that stemmed from the knife attack and was denied.

38.

On March 5, 2009 while being on a routine Call out for Medical Complaints Plaintiffs blood pressure was "allegedly" Elevated and Defendant Roundtree was on call.

39.

When Defendant Roundtree saw Plaintiff he asked why was plaintiff in the ER and after being told that it was for Elevated Blood Pressure Defendant Roundtree Stated: "isn't that something the same one who files ARP's and gets us arrested is now seeking Medical attention.

40.

Defendant Roundtree then prescribed a small white pill and as plaintiff took it he stated: (defendant Roundtree)" get him out of my sight he can go to the back cells until we call for him."

41.

Shortly after being placed in the holding cell plaintiffs Blood pressure fell so low until plaintiff passed out "twice" before an inmate noticed the plaintiff was on the floor. The pill nearly killed the plaintiff.

42.

Plaintiff was then placed back on the bench and plaintiff told the officer that the Dr. said: he needed plaintiffs Blood pressure checked in 30 minutes. (Plaintiff lied because to make an emergency while in the infirmary usually takes hours to be seen and Plaintiff felt he was at deaths door.

43.

As Plaintiffs Blood Pressure was being checked by a nurse, the nurse jumped up and ran to Dr. Roundtree and said this inmate is crashing his Blood Pressure is critically low at 70 over 51. (The reading was documented).

44.

Plaintiff was rushed back to ER to be given a counter drug to elevate his Blood Pressure and Defendant Burkes and a EMT Prepara told Plaintiff to sit on the Bench and wait until they finished

13

their lunch.

45.

As plaintiff blanked in an out of consciousness Defendant Boeker sat back in her chair and smiled saying: "I wish I had some cyanide to give him."

46.

EMT Prepora laughed and asked why.

47.

Defendant Boeker stated: "To kill him with."

48.

Defendant Boeker while looking at me with distaste said prepora give me a 16 gauge needle this is what he needs and she began to stab the syringe into plaintiffs arm and vein so deeply until blood dripped from the plaintiffs arm.

49.

As the plaintiff protested in pain Defendant Boeker continued to take the needle out and stab it into the plaintiffs arm and vein inso angling the the needle up through plaintiffs vein/skin (in a sewing fashion) then stabbing it through plaintiffs arm inso making the needle appear as if it were sewn into plaintiffs flesh.

50.

Plaintiff then loudly protested and addressed the matter and Defendant Boeker nervously looked over

14

her shoulder Laughing as she jerked out the syringe.

51.

Seeing the Comotion EMT Prepora came and administered the shot inwhich inevitably stabilized plaintiffs Blood Pressure.

52.

Upon filing Complaints to Defendant Cain, Leblanc and Dilworth regarding Continued retaliation on the Plaintiff Defendants Hawkins and Eli Wilson appeared to interview the Plaintiff. STATEMENTs were taken Photo's were taken but the Defendants Hawkins and Wilson said no polygraph's would be given to ME nor Defendant Boeker.

53.

Not only Was Defendant Boeker not disciplined but she was promoted to lieuteneant EMT after her assault on the plaintiff within 60 days of the incident.

54.

Upon Complaining to Defendant Dilworth about the retaliation plaintiff suffered and the most recent attack by Defendant Boeker Plaintiff received a harsh neotation, from Defendant Dilworth stating in sum that he could care less what type of retaliation plaintiff was receiving and he had no intentention on intervening because the plaintiff made his bed hard so he had to lie in it."

15

55.

Contrary to his vow to provide protection to the plaintiff when his initial investigation was conducted Defendant Dilworth clearly demonstrated in his one and only response and reply to the plaintiffs numerous complaints regarding unrestrained retaliation that he silently consented to the institutions retaliation and plaintiff was in fact on his own to fend for himself.

56.

Due to prolonged and unfettered retaliation, suffering, abuse and denial of Medical Care plaintiff sought Mental Health assistance yet was denied any kind of treatment from Defendant Reinbold, Ard and Ankerbrand. The Defendants informed the plaintiff that only inmates in Dormatories may receive counseling.

57.

In the May issue of the Prison Magazine the Angolite in which is circulated amongst all institutional inmates in Angola, throughout DOC, All DOC Personnel and world wide in society it was printed on pg.6 that:

"The Social worker defendant Midkiff was arrested in February 2009 for Aggrivated Rape and charged with using Threats of violence to force plaintiff to perform oral sex on another inmate."

16

58.

This fabrication alleged was concocted and printed in the Angolite and Defendants Dilworth, Wilson and Kevin Benjamin knew that it was false inso placing plaintiffs physical welbeing safety and life in jeopardy byway of labling the plaintiff a homosexual inmate that could be forced to perform sex acts via threats of bodily harm/violence.

59.

Due to the Defendants Dilworth, Wilson and Benjamin's Collective efforts to retaliate and slander Petitioners/Plaintiffs Character in labling Plaintiff a homosexual plaintiff suffered increased threats of bodily harm and advances by inmates for sexual favors.

60.

One inmate confronted plaintiff about security and Medical Staff officers Defendant Orr, Boeker and Akwon's allegations that plaintiff had performed oral sex and a fight ensued.

61.

Plaintiff had xrays taken of his hand and wrist and when taken to the infirmary ER Defendant Roundtree was summonsed.

62.

Defendant Roundtree took one look at Plaintiff and said he's fine send him where he lives without as much as glancing at Plaintiffs disfigured hand.

17

63.

Plaintiff wasn't given any pain pills and his X-Rays weren't read. Plaintiff's hand was so swollen and disfigured until the Camp Unit Security Supervisor sent the Plaintiff back to the ER infirmary without any medical clearance for treatment.

64.

Plaintiff was once more denied medical treatment and returned to his living quarters.

65.

After months of complaints, ARPs, sick call request and having family seek governmental assistance plaintiff was seen once more and denied medical treatment.

66.

While seeing a GI specialist Plaintiff showed him his disfigured hand and told him about his plight and the Dr. personally filled out paperwork for plaintiff to see the orthopedic specialist.

67.

After more than 5 months of complaints as well as pain and suffering a MRI revealed torn ligaments in the wrist and detached tendons across the plaintiffs knuckles surgery was ordered but denied 5 times.

68.

Plaintiff continued throughout this assortment

of retaliation from all levels of Prison Personnel to file grievances.

69.

Plaintiff suffers from acute physical ailments and injuries and since the filing of the Criminal Charge against Defendant Midkiff Plaintiff has had all Medical Treatments Cancelled, Surgeries Cancelled and Necessary Medications Stopped without cause.

70.

After the Rape Plaintiff retained legal representation from a one Attorney Charlotte McGehee and during the investigation process of Defendant Midkiff the Defendant Cindy Vannoy of Angola's Mail Room opened plaintiffs Clearly Marked legal Mail (Attorney Mail). Defendant Vannoy Made Copies of Plaintiffs legal documents and on another occasion held Plaintiffs Attorney Mail for one week before sending it to the plaintiff via nonprivate Mail delivery.

71.

Plaintiffs Clearly Marked Attorney Mail Contained facts the Defendants did not know regarding the whereabouts of additional Evidence and all Attorney Client privilege information as well.

72.

Plaintiff Sought Federal Assistance from Senator David Vitter and Defendant Vannoy opened, read and Copied Clearly Marked and Stencilled U.S. Congress Senator DAVID Vitter's

Mail and STAMPed the Notation inspected.

73.

Plaintiffs Attorney Mail and Correspondences to Senator Vitter were opened at least 5 Times.

74.

Defendant Vannoy's tampering, Censoring and removal of Documents Caused such a rift between Plaintiff and his Attorney until Counsel abandoned representation duties and quit the Case. Defendant Vannoy openly violated Plaintiffs Attorney Client Confidentiality Clause as well as violated Plaintiffs Legal Mail Privacy Rights.

75.

The witnesses and victims of Defendant Midkiffs unwanted Sexual harassment, assault and advances informed Plaintiff that Defendant Wilson Came back to Camp J weeks after taking their Statements and said; thats all inmate Slobber there was No Rape and I Guarantee its a bunch of baloney, he has No Case.

76.

Months later Plaintiff Saw Defendant Wilson and was told he should have Settled.

77.

Plaintiff said you've polygraphed every single inmate that had a serious Sexual Complaint as mine So why wouldnt you polygraph me?

20

78.

Defendant Wilson responded a polygraph wouldn't help the state. We knew and know that you had some kind of sexual relations or contact with Midkiff, but I dont think you can prove it. I told you before Midkiff is gone and he knows that he's lucky to be free so he wont try to sue us. You blew your opportunity so thats on you.

79.

Months later the PREA analysis had unidentified DNA findings and different material cloth evidence other than the evidence that the plaintiff gave to Wilson and Dilworth.

80.

Defendant Wilson and Dilworth clearly tampered with the evidence in an attempt to obstruct Justice.

81.

Since the Rape attack the plaintiff has suffered physical attacks by inmates, Psychological Torture by inmates and prison personnel and unmeasurable levels of retaliation.

82.

The documented evidence, circumstances and events that clearly establish and prove that Defendants Dilworth and Wilson tampered with the evidence or planted false evidence against the plaintiff "prior" to the submitting of the evidence to PREA can be established in the May issue 2009 Angolite where Defendant Midkiff was excluded as a participant of the sex act (Rape) and unknown inmates were placed in his place.

21

83.

Defendant Wilson began as early as March 2009 planting seeds of doubt into the minds of Defendant Midkiffs Victims that the test results were inmate slobber and not Defendant Midkiffs. The only way that Defendant Dilworth and Wilson could have known the results of the PREA analysis in advanced was byway of planting the evidence themselves in order to free Midkiff and in attempts of avoiding a public scandal as well as Civil damages.

84.

Defendant Midkiff suffered public humiliation, arrest, $200,000 loss of bond Money, Embarassment of being in the advocate and didn't as much as file a Civil Action? An innocent Man would have.

85.

The Defendants in this Case have attacked Me, retaliated against Me and Conspired against the plaintiff and ineso should be held accountable for their actions.

86.

Defendant Midkiff is indebted to the petitioner herein for his negligent and or intentional acts, which include, but are not limited to:

    a. intentional inflictions of emotional distress;
    b. negligent infliction of emotional distress.

C. Assault and battery;

d. Sexual assault and

Other Such intentional and or unintentional negligent acts and or omissions as will be more particularly proven at a trial of this matter.

87.

WARDEN CAIN

Defendant Cain is indebted to the Petitioner herein for his negligent and or intentional acts, which include, but are not limited to:

a. Failing to adequately train and or supervise employees over whom he exercises authority; and.

B. Allowing predatory objectively gay employee, Defendant Midki77, to continue to work without supervision and without investigation of the acts of misconduct prior to the rape of the plaintiff.

C. Defendant was responsible for providing a safe environment for inmates at the prison and failed to do so.

D. Defendant was deliberately indifferent to a substantial risk of harm to the Plaintiff before the rape and after the rape.

E. Defendant deliberately denied Plaintiff Necessary emergency Grievance ARP access and assistance regarding retaliative abuse, torture and sufferings that were rained upon the plaintiff for reporting the rape and

Other such intentional and or unintentional/negligent acts and or omissions as will be more particularly proven at a trial of this matter.

88.

Secretary and undersecretary of the Dept. of Corrections.

Defendants Leblanc and Ramsey are indebted to the plaintiff for their neglect and negligent and or intentional acts which include, but not are not limited to:

a. Failing to adequately train, screen and or supervise employees over whom they exercise authority; and

B. Allowing a policy of deliberate indifference toward the hiring and supervisory practices of Warden Cain who was deliberately indifferent in hiring a predatory objectively gay male employee Defendant Midkiff to continue to work without supervision and without investigation of the acts of misconduct prior to the Rape of the plaintiff.

c. Defendants Leblanc and Ramsey were deliberately indifferent to systematic problems and denials by Defendant Cain as well as their own department in denying acknowledgment and access into the ARP process due to institutional indifference and desire to avoid addressing and acknowledging heinous crimes and institutional retaliative actions and conduct was and continues to be dealt upon the plaintiff for reporting the Rape.

D. Defendant Leblanc and Ramsey were responsible for providing a safe environment for inmates at the

24

Prison
but failed to do so.

E. Defendants Leblanc and Ramsey conspired to deny plaintiff Due process and access to the ARP process due to plaintiffs persistant efforts to litigate and expose Sexual related Crimes Committed upon inmates at Angola and retaliation Suffered for exposing the Same.

F. Defendants were deliberately indifferent to a substantial risk of harm to the plaintiff and other Such intentional and or negligent acts and or omissions as will be more particularly proven at a trial of this matter. 89.

## Defendant Dilworth

Defendant Dilworth is indebted to the petitioner herein for his negligent and or intentional acts, which include, but are not limited to:

a. Failing to adequately and properly investigate the rape of Kermit Parker by Defendant Midkiff.

B. Obstruction of Justice for failing to secure/maintain evidence for a criminal felony offense and planting false/misleading evidence.

c. Conspiracy to obstruct justice by planting false evidence or failing to maintain untainted evidence against a Rape victim in efforts to free a Sexual predator and avoid previously unaddressed similar complaints in regards to the Same.

D. Deliberate indifference to a substantial risk of harm to Mr. Parker and his State and constitutional Rights and privileges.

Other such intentional and or Negligent acts or omissions as will be more particularly proven at a trial of this matter.

90.

### Defendant Eli Wilson

Defendant Wilson is indebted to the petitioner herein for his negligent and or intentional acts, which include but are not limited to:

a. Conspiracy to obstruct Justice and planting false evidence in the investigation of a Rape of the plaintiff by Defendant Midkiff and retaliation against a rape victim.

b. Failing to lawfully collect evidence and investigate as well as plant Knowingly misleading and false evidence.

c. Obstruction of Justice for failure to secure and maintain evidence for a felony criminal investigation.

d. Conspiracy to obstruct Justice by the planting of false evidence and tampering with assault victims and witnesses in a Rape investigation.

e. Retaliation and or Deliberate indifference to a Rape victim's Constitutional Rights as well as a substantial risk of harm to the victim.

7. Deliberate indifference to a substantial risk to plaintiff.

Other such intentional and or Negligent acts or omissions

inWhich will be More particularly proven at a trial of this matter.
91.
DEFENDANT TRISH Foster

Defendant Trish Foster is indebted to the petitioner herein for her Negligent and or intentional acts which include but are not limited to:

a. Failing to address acts of retaliation and remedy a finding.

b. Allowing a practice of deliberate indifference towards remedies and policies that were in place to avoid retaliation and substantial risk to Sexual assault victims.

c. Deliberate indifference to a substantial risk of harm to Mr. Parker and his protected State and U.S. Constitutional Rights and

other Such intentional and or Negligent acts and or omissions as will be more particularly proven at a trial of this matter.
92.
Defendant Kevin Benjamin

Defendant Kevin Benjamin is indebted to the petitioner herein for his Negligent and or intentional acts, which are not limited;

A. Deliberate indifference to a substantial risk of harm to the plaintiff for printing damaging, incitful and false information in the institutionally circulated and Societally circulated Angolite Magazine.

27

B. Deliberate indifference to a Substantial risk to plaintiffs Safety.

C. Emotional distress, defamation and irreparable harm to plaintiffs character/sexual identity.

Other such intentional and or negligent acts and/or omissions as will be more particularly proven at a trial of this matter.

93.

D. Defendant Cindy Vannoy

Defendant Cindy Vannoy is indebted to the petitioner herein for her negligent and/or intentional acts, in-which include but are not limited to;

a. Conspiracy to obstruct Justice by aiding and abetting investigating Services officer Defendant Wilson and Defendant Dilworth in violating plaintiffs U.S. Constitution First Amendment Right to privately communicate with his Counsel without the prison personnel interfering, Censoring and removing documents from the plaintiffs Legal Correspondences to his Attorney and Senator David Vitter.

B. Obstruction of Justice and Conspiracy to obstruct Justice by retaliating against a Rape victim.

C. Deliberate indifference to plaintiffs State and U.S. Constitutional Rights.

Other such intentional and or negligent acts and or omissions as will be particularly proven at a trial of this matter.

28

94.

Defendant Amy Boeker

Defendant Amy Boeker is indebted to the petitioner herein for Negligent and or intentional acts, which include but are not limited to:

    a. Assault and intentional inflictions of bodily harm with a Medical device.

    b. Intentional inflictions of Pain and Emotional distress.

    C. Deliberate indifference to Plaintiffs Safety and violation of Plaintiffs U.S. Constitutional Rights and State Rights.

Other Such intentional and or Negligent acts and or omissions as will be more particularly proven at a trial of this Matter.

95.

Defendants) Amanda Aikwon (DOE) and John Orr.

1) Defendants Amanda Aikwon (DOE) and John Orr are indebted to The petitioner herein for their intentional and or Negligent acts which include but are not limited to:

    a. Deliberate indifference to The Safety and welfare of petitioner.

    b. Spreading rumors and jeopardizing the Safety and welfare of a Rape victim.

    C. intentional infliction of Emotional distress and psychological Trauma.

    D. Negligent infliction of Emotional distress.

    E. Deliberate indifference to a Substantial risk to plaintiffs safety.

    F. Malfeasance.

Other such intentional and unintentional acts and

or omissions as will be more particularly proven at a trial of this matter.

96.

Defendant Hawkins

Defendant Hawkins is indebted to the Petitioner herein for his negligent and/or intentional acts, which include but are not limited to:

a. Deliberate indifference to the safety and welfare of the plaintiff and allowing retaliation and suffering of an aggrivated assault.

b. Failure to report a felony.

c. Malfeasance in office for failing to report a felony.

d. Filing a false report knowingly.

Other such intentional and/or negligent acts and/or omissions as will be more particularly proven at a trial on this matter.

97.

Defendant Reinbold, Ankerbrand and Ard

Defendants Reinbold, Ankerbrand and Ard are indebted to the Petitioner herein for their intentional and/or negligent acts, which include, but are not limited to:

a. Defendants were deliberately indifferent to a substantial risk of harm to plaintiffs mental and emotional stability and health.

b. Failing to offer counseling to plaintiff.

c. Conspiracy to deny plaintiff therapy or counseling.

Other such intentional and/or unintentional acts and/or omissions as will be more particularly proven at a trial of this matter.

98.

Defendant Jonathan Arlene Roundtree

Defendant, Jonathan Arlene Roundtree is indebted to the
Petitioner herein for his intentional and or negligent
acts inwhich include but are not limited to:

    a. Deliberate indifference to plaintiffs
    serious Medical needs to a substantial
    risk of harm to serious medical injuries,
    Conditions, pain, Suffering and Emotional
    distress.

    b. Failure to address or cease the retaliation
    by those whom he ~~examines~~ exercised
    authority.

    c. Creating an environment of abuse, torture
    and indifference byway of spearheading abuse,
    indifference, denial of Medical Treatment and
    retaliation against the plaintiff.

    D. Creating an unsafe environment and abusive
    pretense for plaintiff by those whom he exercises
    authority over.

Other such intentional and or negligent acts and
or omissions as will be more particularly proven
at a trial of this Matter.

99.

Defendant STATE OF LOUISIANA

Defendant STATE of Louisiana, through the Department
of Public Safety and Corrections is liable to the
Petitioner herein in that its office of Adult services,
the governing Authority over its Employees and is the
Employer of and therefore, is liable, under Article
2317 of the Louisiana Civil Code and the theory
of respondeat superior, for the damages occasioned
by the Petitioner herein due to the acts and or
omissions of its employees.

100.

## First Claim For Relief

Plaintiff seeks relief from harassment and intentional infliction of emotional distress for all damages arising there pursuant to La. C.C art. 2315. This Claim is supplemental and incidental to and forms part of an ongoing and arises out of the same transaction or occurrence or common course of events as set forth in the original complaint for which remedy(ies) lies under Federal law, State law and the Constitution of the United States.

101

## Second Claim For Relief

Plaintiff seeks relief in the form of Attorney fees and cost pursuant to 42 USC §1983 and punitive damages pursuant to 42 USC §1983.

102

## Third Claim For Relief

Plaintiff seeks relief violations of Eighth Amendment. Cruel and unusual punishment and Plaintiff seeks relief under 42 USC § 1983 for violations of Eighth Amendment Rights.

103

## Fourth Claim For Relief

Plaintiff seeks relief for Eighth Amendment and Fourteenth Amendment violations. Plaintiff's Eighth and Fourteenth Amendment claims are based on allegations that the Administrative defendants:
(1) Maintained deficient conditions of confinement by failing to maintain a safe environment.
(2) Failed to adequately train and supervise prison officials, and promulgate policies and customs that caused the alleged sexual violation.

(3) were deliberately indifferent to plaintiffs alleged sexual violations and his medical as well as psychological care, before and after the alleged violations;

(4) Conspired against plaintiffs rights in efforts to cover up and avoid accountability for the alleged sexual violations and

(5) retaliated and allowed retaliation against plaintiff because of the complaint(s).

104.

This Court has jurisdiction over this claim pursuant to Louisiana Law, and pursuant facts and continuing violence against Mr. Parker, the specified administrative remedies or procedures have been exhausted or that the present situation is one of the exceptional situations where the plaintiff is entitled to judicial relief because any administrative remedy is irreparably inadequate. See Gray v. State, 923 So. 2d 812, (La. App. 3 Cir. 2/15/06).

105.

Jury Trial Requested

Plaintiff Prays for a Jury Trial on all issues.

106.

Wherefore, Plaintiff prays that Defendants be cited to appear and answer and that after resolution of this matter that this Court enter judgment in favor of Plaintiff against Defendants with legal interest from the date of demand as follows:

(1) For sexual assault (Rape), assault and retaliation.

(2) For Emotional and Mental distress, pain and suffering, humiliation, embarassment, Conspiracy against Rights;

(3) All litigation Expenses

(4) For Attorney litigation fees and for Cost as may be allowed by Law;

For Such other relief that this Court, may deem Just, equitable and proper.

Respectfully Submitted:

Kermit A. Parker

Kermit Parker
Doc # 129332
La. State Prison
Angola, La. 70712

Service information:

Please Send:

STATE of Louisiana through the Department of Public Safety and Corrections, Secretary James M. Leblanc
504 Mayflower St.
Baton Rouge, La. 70804

Warden N. Burl Cain,
Louisiana State Prison
Angola, La. 70712

Honorable Attorney General
Buddy Caldwell

## Certificate of Service

I Plaintiff Kermit Parker #129332 Do Hereby Swear under the Penalty of Perjury that the herein Civil Action and in Forma Pauperis request is being Mailed to the Clerk of Court office For the U.S. District Court, Middle District of La

I am placing the Said documents into the hands of the institutional Classification officer to be Mailed to the Clerks office

All done and Sworn on the 27th day of JUNE 2011.

S/ Kermit A Parker
Kermit Parker
Doc #129332
Camp J Cuda 3 R
La. State Prison

C.C.

NOTARY officer official D. Cavalier 66851

Ex-Officio Notary
Dpt. of Public Safety & Corrections/LSP



Marksen
Wed Parish
La State Prison
Angola, La. 70712

CAMP J

Clerk's Office
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA
777 Florida Street, Suite 139
Baton Rouge, La. 70801-1762

SCREENED
OK
U.S. MARSHAL